UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

OMAR CUMBERLAND,

                        Plaintiff,

            -against-

THE CITY OF NEW YORK, Correction Officer CARLOS ENGLETON Shield No. 14671, Correction Officer DWAYNE COCKBURN Shield No. 17563, Captain "JOHN" HERNANDEZ, Shield No. 1612, Correction Officer A. CLARKE, Shield No. 13432, CORRECTIONAL OFFICERS JOHN DOE # 1 THROUGH 5, in their individual and official capacities as employees of the City of New York,

                        Defendants.

------------------------------------------------------------- X

**AMENDED COMPLAINT**
Jury Trial Demanded

15 CV 1920 (BMC)

## NATURE OF THE ACTION

1.    This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution of the United States, the Constitution of the State of New York as well as the common law of the State of New York.

## JURISDICTION AND VENUE

2.    This is a civil rights action for money damages brought pursuant to 42 U.S.C. §§§ 1981, 1983, and 1988, the Eighth and Fourteenth Amendments of the United States Constitution, against defendants mentioned above and against the City of New York.   The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

**VENUE**

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a)

(b) and (c).


**JURY DEMAND**

4.      Plaintiff demands a trial by jury in this action.

**PARTIES**

5.      Plaintiff at all times relevant hereto resided in the City and State of

New York.

6.      That at all times hereinafter mentioned, and upon information and

belief, the defendant City of New York, was at all times relevant hereto, a

municipal corporation duly organized and existing pursuant to the laws,

statutes and charters of the State of New York.

7.      The New York City Department of Correction was at all times

relevant hereto, an agency of the defendant City of New York.

8.      That at all times hereinafter mentioned, and on information and

belief, Defendant CARLOS ENGLETON, Shield No. 14671, was at all

times relevant hereto, an employee of the defendant City of New York, as

a correctional officer employed by the New York City Department of

Correction. Defendant CARLOS ENGLETON is sued in his individual

capacity.

9.      Defendant CARLOS ENGLETON at all relevant times herein, either directly participated or failed to intervene in the assault of plaintiff.

10.     That at all times hereinafter mentioned, and on information and belief, Defendant DWAYNE COCKBURN Shield No. 17563, was at all times relevant hereto, an employee of the defendant City of New York, as a correctional officer employed by the New York City Department of Correction. Defendant DWAYNE COCKBURN is sued in his individual capacity.

11.     Defendant DWAYNE COCKBURN at all relevant times herein, either directly participated or failed to intervene in the assault of plaintiff.

12.     That at all times hereinafter mentioned, and on information and belief, Defendant "JOHN" HERNANDEZ, first name unknown, Shield No. 1612, was at all times relevant hereto, an employee of the defendant City of New York, as a captain employed by the New York City Department of Correction. Defendant "JOHN" HERNANDEZ is sued in his individual capacity.

13.     Defendant "JOHN" HERNANDEZ at all relevant times herein, either directly participated or failed to intervene in the assault of plaintiff.

14.     That at all times hereinafter mentioned, and on information and belief, Defendant A. CLARKE, Shield No. 13432, first name unknown, Shield No. 13432, was at all times relevant hereto, an employee of the defendant City of New York, as a captain employed by the New York City

Department of Correction. Defendant A. CLARKE is sued in his individual capacity.

15.    Defendant A. CLARKE sat all relevant times herein, either directly participated or failed to intervene in the assault of plaintiff.

16.    That at all times hereinafter mentioned, the individual defendants are named herein both personally and in their official representative capacities as correctional officers employed by the defendants, The City of New York through its agency, the New York City Department of Correction.    And that each and all of the acts of the individual defendants alleged herein were done by the individual defendants and each of them under cover and pretense of the statutes, ordinances, regulations, policies, customs, usages and laws of the City and State of New York.

17.    At all times mentioned herein, defendants were acting under color of state and local law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the City of New York and the State of New York.

## STATEMENT OF FACTS

**A History of Excessive Force in New York City Jails**

18.    In August of 2014, the United States Attorney's Office issued a shocking report, exposing the DOC for deplorable conditions in New York City Jails, including of course the DOC's culture of excessive use of force

by staff against inmates. In fact, for decades, through Department reports and civil litigation, DOC has been aware of the routine, dangerous, and unconstitutional use of excessive force by staff at individual facilities in the New York City Department of Correction. *See, e.g., Fisher v. Koehler*, 692 F. Supp. 1519 (S.D.N.Y. 1988), *injunction entered*, 718 F. Supp. 1111 (1989), *aff'd*, 902 F.2d 2 (2d Cir. 1990) [Correction Institution for Men]; *Jackson v. Montemagno*, CV 85-2384 (AS) (E.D.N.Y.) [Brooklyn House of Detention]; *Reynolds v. Ward*, 81 Civ. 101 (PNL) (S.D.N.Y.) [Bellevue Prison Psychiatric Ward]; *Sheppard v. Phoenix*, 91 Civ. 4148 (RPP) (S.D.N.Y.) [Central Punitive Segregation Unit].

19.    For example, *Sheppard v. Phoenix*, 210 F. Supp. 2d 250 (S.D.N.Y. 1998) (terminating injunction), was a class action that concerned the City's Central Punitive Segregation Unit (CPSU). That litigation unearthed abuse of prisoners and cover-ups sufficiently serious to merit criminal prosecution.

20.    *Ingles v. Toro*, 438 F. Supp. 2d 203 (S.D.N.Y. 2006) (approving stipulation of settlement), was a system-wide class action challenging the pervasive practice of using excessive force against inmates incarcerated in New York City's jails. This litigation revealed significant numbers of credible excessive force complaints from prisoners who had been seriously injured by staff in the City jails. The settlement of this class action was intended to provide meaningful improvements in the training,

practice, and supervision of agency staff and investigators, and changes

in the Department's use of force policy.

21.     Since 2002, senior supervisors and uniformed staff in the DOC

have been sued repeatedly by inmates alleging staff beatings. Many of

these cases, all resulting in favorable judgments for plaintiffs following

settlement, include remarkably similar allegations of misconduct. See:

- Reynolds v. City of New York, No. 11 Civ. 621 (S.D.N.Y.) (alleging

  beat-up in George Motchan Detention Center ("GMDC") resulting in

  shoulder fracture and loss of consciousness; settled for $200,500);

- Mull v. City of New York, No. 08 Civ. 8854 (S.D.N.Y.) (alleging

  beat-up in AMKC resulting in diffuse axonal injury to brain, partial

  loss of eyesight, and partial loss of hearing, and requiring the

  victim to take seizure medications; settled for $550,000);

- Belvett v. City of New York, No. 09 Civ. 8090 (S.D.N.Y.) (alleging

  beat-ups at GMDC and Robert N. Davoren Center ("RNDC")

  resulting in facial fracture;  settled for $350,000);

- Youngblood v. Baldwin, No. 08 Civ. 5982 (S.D.N.Y.) (alleging

  beat-up at GRVC resulting in skull laceration and broken nose;

  settled for $240,000);

- Williams v. City of New York, No. 07 Civ. 11055 (S.D.N.Y.)

  (alleging beat-up in Otis Bantum Correctional Center ("OBCC")

  resulting in fractured jaw and facial bones and torn earlobe; settled

  for $202,500);

• Williams v. City of New York, No. 09 Civ. 5734 (S.D.N.Y.) (alleging beat-up in RNDC resulting in laceration to head; settled for $87,500);

• Lee v. Perez, No. 09 Civ. 3134 (S.D.N.Y.) (alleging beat-up at North Infirmary Command ("NIC") resulting in multiple rib fractures, a spinal fracture and a collapsed lung; settled for $300,000);

• Shuford v. City of New York, No. 09 Civ. 945 (S.D.N.Y.) (alleging two beat-ups at RNDC resulting in facial fractures; settled for $375,000);

• Diaz v. City of New York, No. 08 Civ. 4391 (S.D.N.Y.) (alleging beat-ups involving two inmates, one at AMKC and one at OBCC; settled for $400,000 and $450,000, respectively);

• Lugo v. City of New York, No. 08 Civ. 2931 (S.D.N.Y.) (alleging beat-up at NIC resulting in orbital fracture; settled for $185,000);

• Cuadrado v. City of New York, No. 07 Civ. 1447 (S.D.N.Y.) (alleging beat-up at RNDC resulting in punctured lung; settled for $175,000);

• Scott v. City of New York, No. 07 Civ. 3691 (S.D.N.Y.) (alleging beat-up at GMDC resulting in orbital fracture; settled for $175,000);

- Pischeottola v. City of New York, No. 06 Civ. 2505 (S.D.N.Y.)

(alleging beat-up at RNDC resulting in punctured lung requiring

chest tube; settled for $150,000);

- Rice v. N.Y.C. D.O.C., No. 03 Civ. 582 (S.D.N.Y.) (alleging beat-

ups of two inmates at GRVC resulting in collapsed lung and

contusion hematomas in one case, and in neck and spinal cord

injuries causing permanent stutter in the other; settled for

$255,000 and $590,000, respectively);

- Joseph v. N.Y.C. D.O.C., No. 02 Civ. 9219 (S.D.N.Y.) (alleging

beat-up at GRVC resulting in orbital fracture; settled for

$375,000).

22.    Additionally, through DOC's elaborate reporting system, the City of

New York was aware of the pattern of a large number of incidents

involving the use of unnecessary and/or excessive force by DOC staff

members resulting in serious injuries to inmates but failed to take

sufficient steps to curb these abuses.

23.    At the time plaintiff was beaten, the City was aware of the

unwillingness of the Department to investigate adequately and impose

meaningful discipline against DOC staff members who use unnecessary

and excessive force on prisoners, or who fail to accurately and honestly

report it.

24.    Through all these cases and Department reports, the City has been

made aware of the widespread practice by DOC staff members of using

excessive and/or unnecessary force to injure, and not restrain, inmates. They have also been made aware of the failures of DOC's Investigation Division to adequately investigate allegations of misconduct and of the refusal of the Department to bring effective disciplinary charges against its officers to promote institutional reform and protect the safety of prisoners confined in DOC custody.

25.    The City cannot credibly contend that they are unaware of the pattern of abuse that occurs with regularity in New York City jails and the failure of the City to take sufficient measures to investigate and discipline this abuse.

26.    The City has not taken sufficient steps to curb the abuse that occurs on a daily basis in New York City jails. Indeed, it allows that abuse to persist through inadequate investigations of allegations of misconduct and the failure to discipline officers in the face of obvious wrongdoing.

**Assault upon Plaintiff**

27.    Plaintiff is an African-American male.

28.    On or about February 16, 2013, plaintiff's girlfriend, Danielle Graham, was visiting plaintiff at Robert N. Davoren Complex (RNDC) located at 11-11 Hazen Street, East Elmhurst, New York. Ms. Graham requested defendant correctional officer CARLOS ENGLETON Shield No. 14671 allow her access to the restroom. Defendant ENGLETON denied

Ms. Graham's request. Plaintiff asked to discuss the matter with a captain on behalf of Ms. Graham. In response, correctional officer ENGLETON walked off angrily. Plaintiff continued his visitation appointment with Ms. Graham who was allowed access to the restroom.

29.    When plaintiff finished his visit, defendant correctional officers pulled plaintiff from the search line and isolated plaintiff.

30.    Defendant ENGLETON handcuffed plaintiff.   Once plaintiff was completely restraint, ENGLETON punched plaintiff in the face with a tremendous amount of force.   Defendant correctional officer DWAYNE COCKBURN SHIELD No. 17563 and other correctional officers followed suit attacking and mercilessly beating plaintiff.

31.    Thereafter,    defendant    correctional    officers    ENGLETON, COCKBURN, HERNANDEZ and CLARKE dragged plaintiff. While dragging the plaintiff, the individual defendants ripped plaintiff's clothes and continued beating and kicking plaintiff.  Plaintiff lost consciousness.

32.    Plaintiff woke up on the floor covered in blood. The defendant correctional officers continued kicking and punching plaintiff about the head and body, while plaintiff was lying on the floor handcuffed.

33.    Plaintiff felt nauseous and became concussed.

34.    Defendant correctional officers dragged plaintiff to the North Infirmary Command where plaintiff had to be placed on a gurney. Plaintiff was unrecognizable, as his face appeared deformed and swollen.

Once at the prison infirmary, the prison doctor took a look at plaintiff and called 911. Plaintiff was rushed to Elmhurst Medical Center. Plaintiff was transported to Elmhurst barefoot and scantily clad in the winter.

35.     At the hospital, doctors took several x-rays of plaintiff's face and confirmed the existence of a fracture. Plaintiff also sustained a gash to the face as a result of this assault. Plaintiff remained in the hospital for some time due to the injuries he sustained at the hands of these violent defendants.

36.     At no time did plaintiff assault or attempt to assault any officer, nor did he present a threat or perceived threat to the personal safety of any officer or to the security of the jail so as to warrant such violence.

37.     Plaintiff did not provoke this attack nor did he conduct himself in any manner that would warrant any use of force, much less the excessive force actually used. Defendant officer acted sadistically and maliciously and demonstrated deliberate indifference toward plaintiff's rights and physical wellbeing.

38.     All of the above was done in violation of state and federal law.

39.     Defendant employed unnecessary and unreasonable force against the plaintiff. Defendant officers acted maliciously and intentionally, and said acts are examples of gross misconduct.

40.     The conduct of the defendant correctional officers in assaulting the plaintiff and denying him medical attention directly and proximately caused serious physical and emotional injury, pain and suffering, mental anguish, humiliation and embarrassment.

41.     The officers intentionally used excessive force. The individual defendants acted with reckless and wonton disregard for the rights, health, and safety of the plaintiff.

42.     As a direct result of the acts alleged herein, the plaintiff has suffered serious physical injury and pain, severe mental pain and anguish, and severe emotional distress. All of the events complained of above have left permanent emotional scars that the plaintiff will carry with him for the remainder of his life.

## COUNT ONE
### 42 U.S.C. § 1983
### Excessive Use of Force
### Against Individual Defendant Officers

43.     The plaintiff incorporates by reference the factual allegations set forth above as if fully set forth herein.

44.     The conduct and actions of defendants acting under color of law and under their authority as New York City police officers was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification, and was designed to and did

cause specific serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. § 1983 and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

45.   As a direct and proximate result of this misconduct and abuse of authority detailed above, plaintiff sustained the damages herein alleged.

## COUNT TWO
## 42 U.S.C. § 1983
## Against Defendant City

46.   The plaintiff incorporates by reference the factual allegations set forth above as if fully set forth herein.  Prior to the date of the incident alleged herein, the City of New York developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in New York, which caused the violation of plaintiff's rights.

47.   It was the policy and/or custom of the City of New York to inadequately and improperly investigate citizen complaints of widespread, systemic police misconduct, and such acts of misconduct have instead been allowed by the City of New York.

48.   It was the policy and/or custom of the City of New York to inadequately supervise and train its police officers, including the defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City of New York did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

49.     The effects of any in-service training and re-training of officers known to have engaged in police misconduct were wholly negated by the rampant culture of misconduct and impunity sanctioned by the command structure of the New York City Police Department and City of New York.

50.     As a result of the above described policies and customs, police officers of the City of New York, including the Defendant Officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be allowed.

51.     The above described policies and customs demonstrated a deliberate indifference on the part of policymakers of the City of New York to the constitutional rights of persons within the City, and were the cause of the violations of plaintiff's rights alleged herein.


**COUNT THREE**
**Failure to Intervene**
**As to all individual defendants**

52.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

53.     Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

54.     Accordingly, the defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

55.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.


DATED:      August 5, 2015
            Brooklyn, New York

_____
Amy Rameau, Esq.
16 Court Street, Suite 2504
Brooklyn, NY 11241
718.887.5536
Fax 718.875.5440
rameaulawny@gmail.com

*Attorney for plaintiff*